## Henry H. Helmick v. Western Assurance Company.

### Gen. No. 11,885.

1. INSURANCE AGENT—*when, not entitled to commission.* Where under an agreement for service, compensation was to be paid to an agent in the event of his performing certain services therein specified, and such services were not rendered, the agent is entitled to no commission.

Action of assumpsit. Error to the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Affirmed. Opinion filed June 20, 1905.

**Statement, by the Court.** This action in assumpsit was brought by Henry H. Helmick, doing business as H. H. Helmick & Co. as an insurance broker, against the Western Assurance Company to recover commissions claimed to be due from the defendant for procuring the Chicago & Grand Trunk Railway Company, the Grand Trunk Junction Railway Company, the Detroit, Grand Haven & Milwaukee Railway Company and the Cincinnati, Saginaw & Mackinaw Railroad Company to place their insurance against fire for the year 1896 with the defendant. The plaintiff in his declaration and in his evidence claimed ten per centum of the amount of premium received by the defendant, which was $16,800.

In the latter part of 1895 and in January, 1896, plaintiff was engaged in the business of fire insurance brokerage, and chiefly in placing insurance for railroad companies. The agreement upon which the action is based is contained in the correspondence between the parties between November 21, 1895, and January 11, 1896. After some preliminary correspondence, not material here, the plaintiff Helmick on November 30, 1895, wrote the defendant as follows:

"About December 10th we will offer you 5 different schedules for bids, but we see no way in which we can be protected unless we give you the names of all roads whose schedules we will present to you and you close the same to us against competition from this date. We would be pleased to hear from you at once in regard to this matter."

On December 2, 1895, Mr. Crandall, Superintendent of Agencies for defendant, replied to the above letter for the defendant, declining the suggestion or request of plaintiff and saying:

"We should not want to curtail our chances for this business in the way you suggest. We can simply say to you, as I said in Chicago, that upon receipt of schedules from you, if we have not already received them from other parties and be open, we will send you a bid and thereafter will not bid

to any one else.   If, however, upon receipt of your schedule it should happen that we have already bid, the schedules will be promptly returned to you with statement to that effect."

On December 3, 1895, plaintiff wrote to defendant as follows:

"During the next four months we will be pleased to present for your consideration the schedules of the following well-known roads, viz. (here follows the names of the roads). We desire to be considered the brokers on these various lines for your companies."

Mr. Crandall replied to this letter for the defendant on December 5, 1895, saying:

"Calling your attention to what we said in our last letter on this subject we beg to advise you further that as to some of these roads we have received and have not granted a like request made by other parties.   We hold ourselves absolutely open on all these roads to whomsoever shall first present us with the schedules.   If we shall first receive schedules from you we will quote you a figure and will not thereafter quote any figures to anyone else, but should we receive these schedules first from other parties we should feel equally bound in honor to name a figure to them and to return your schedules declining to quote to you."

On December 14, 1895, Helmick wired the defendant as follows:   "We mail schedules as mentioned in our letter of December third.   Please close to us."   Helmick confirmed this telegram by two letters of the same date, giving a list of the roads.   The schedules mailed by Helmick were those of 1895.

On December 16, 1895, Crandall on behalf of defendant wired plaintiff as follows:   "We will bid to you only on schedules mailed Saturday."   Thereupon on December 17, 1895, Crandall on behalf of the defendant sent to Helmick by letter a bid, based upon the schedules received from him, to be submitted to the railroad companies, for insurance covering all the properties described in the schedules, for the

year 1896, and returning the schedules. The premium named
in the bid amounted to $18,445. Helmick wrote Crandall on
December 24, 1895, that 750 leased cars contained in the
schedules had been returned to the owners; that they were
valued at $350 each and that this amount should be deducted
from the insurance company's bid; and also inclosing sched-
ules of the Northern Ohio Railway. Crandall on the 26th
of December, 1895, wired, and confirmed it by letter, redu-
cing Grand Trunk bid $660 and increasing Lake Erie bid
$980.

Mr. Helmick testified that he received the revised sched-
ules of 1896 about January 6 or 7, 1896. Mr. Crandall
testified that the defendant received the revised schedules of
the properties of the railroad companies to be insured for 1896
from Rathbone & Company of New York City on January
11, 1896, and that he did not know until that date that any
other schedules than those which had been sent him by Hel-
mick in December, 1895, had been issued by the railroad
companies, and that immediately upon receiving the new
schedules he telegraphed Helmick as follows: "We under-
stand Chicago & Grand Trunk have issued revised schedule
for ninety-six. Figures quoted will not apply to these."
Helmick, upon the receipt of this telegram, did not send
either of these revised schedules which he had in his pos-
session from January 6 or 7, 1896, to the defendant, but he
wrote the defendant on January 11, 1896, stating that he
had requested Mr. Muir, an officer of the Grand Trunk Rail-
road, to forward the revised schedules to the defendant at
Toronto. In his testimony Crandall says that he found from
the schedules received from Rathbone & Company that they
covered different amounts for each of the five roads and that
the amounts for each of the five roads differed in almost all
the items in each case; that the differences aggregated $320,-
435 less in the 1896 schedules than in the 1895 schedules;
that he telegraphed Helmick as soon as he discovered the
difference in the schedules, which was on the same day he
received them. He further says that he never received the
1896 schedules from Helmick, but that on January 15, the

last day that bids could be submitted at Detroit, he received some schedules from Muir. He had, however, on the evening of January 14, 1896, at the request of Rathbone & Co. sent the company's bid on the revised schedules direct to Muir, and told Muir that the bid was to be considered for Rathbone & Co. The bid on the 1896 schedules was $16,800.

The plaintiff testified that he had the bid of the defendant in his possession from December 18, 1895, but he never submitted it to any official of the Grand Trunk Railway.

At the close of all the testimony of both parties, the court, on motion of the defendant, instructed the jury to find for the defendant, which was accordingly done. After overruling a motion for new trial the court entered judgment upon the verdict.

Colin C. H. Fyffe, for plaintiff in error.

Bates & Harding, for defendant in error.

Mr. Justice Smith delivered the opinion of the court.

This suit was brought upon the theory that a contract was made between plaintiff and the defendant for commissions upon which the plaintiff was entitled to recover. Counsel for plaintiff in error very properly say in argument that the agreement between plaintiff and defendant in error for the placing with the latter of the insurance in question is almost wholly, if not quite, contained in the correspondence between the parties. There is no conflict of evidence in the case. As to the terms of the agreement the evidence is clear and certain. The agreement was that if Helmick should be the first one to furnish the defendant with the schedules of the railroad companies mentioned upon which they desired insurance to be written for the year 1896, defendant would bid only through plaintiff, and if the insurance was awarded to defendant and taken out, defendant would pay plaintiff seven and a half per cent. commission upon the premium.

While the plaintiff endeavored to obtain from the defendant an agreement to the effect that the insurance should be

placed solely through him by his letter of November 30, 1895, in which he says: "About December 10 we will offer you five different schedules, but we see no way in which we can be protected unless we give you the names of all the roads whose schedules we will present to you and you close the same to us against competition from this date," this was promptly declined in the letter of defendant in reply, dated December 2, 1895. In that letter the defendant gives very good reasons for adhering to the rule of "First come, first served," and further says: "We can simply say to you, as I said in Chicago, that upon receipt of the schedules from you, if we have not already received them from other parties, and be open, we will send you our bid and thereafter will not bid to anyone else."

On December 3, 1895, probably before he had received the letter of defendant just referred to, plaintiff again tried to have defendant agree to secure him against competition and make him the sole broker for the insurance, in his letter of that date, but without success; for, in reply to this letter, under date of December 5, 1895, the defendant said: "We hold ourselves absolutely open on all these roads to whomsoever shall first present us with the schedules."

The agreement was therefore left by this correspondence in substance as we have above stated it, the defendant in every letter adhering to its first position in all that it said as to the terms of the arrangement. The correspondence clearly shows that the defendant declined to agree that the insurance on the railway lines mentioned should be placed through Helmick solely; but that the defendant would not bid through any other agent upon the schedules received first from Helmick, reserving the right to the defendant in all cases to bid through the party who should first furnish the schedules upon which bids were invited by the railroad companies.

The next inquiry is what was done by Helmick under this agreement. It appears that Helmick furnished to defendant the schedules of the railroad companies for 1895. It does not appear that the companies desired insurance on these

schedules for 1896. It is to be inferred that they did not, for the reason that they prepared schedules for 1896 and in the nature of things these schedules were being prepared during the time the correspondence was progressing. It appears from the schedules for 1896 that the companies desired insurance on about $320,435 less property than that enumerated in the schedules for 1895. The schedules also showed changes in the location and in the character and class of property.

The record shows that the defendant promptly bid on the 1895 schedules, and that the bid was afterwards returned upon Helmick's statement that 750 leased box cars had been returned to the owners, and that Helmick never communicated this bid to any official of the railroads at any time. Although Helmick had received the 1896 schedules on January 8, 1896, in his letter of January 11, 1896, he notified defendant that bids on this insurance must be in by January 15, 1896, he never furnished to defendant the schedules upon which the railroad companies desired insurance for the year 1896, so that it could formulate a bid thereon. Defendant received the 1896 schedules from Rathbone & Co. on January 11, 1896, and forwarded its bid thereon to Detroit on January 14, 1896, through or on behalf of Rathbone & Co.

It clearly appears, therefore, that plaintiff did nothing under the agreement to entitle him to the commissions sued for, and the instruction given by the Circuit Court to find a verdict for the defendant was properly given.

The judgment is affirmed.                                        *Affirmed.*